**Nos. 23-2234(L), 23-2241(M)**

## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

―――――――――

HANAN ELATR KHASHOGGI,

*Plaintiff-Appellant-*
*Cross-Appellee,*

v.

NSO GROUP TECHNOLOGIES LIMITED;
Q CYBER TECHNOLOGIES LIMITED,

*Defendants-Appellees-*
*Cross-Appellants.*

―――――――――

On Appeal from the United States District Court Eastern District of
Virginia, No. 1:23-cv-00779-LMB-LRV, Hon. Leonie M. Brinkema

―――――――――

## REPLY BRIEF
## FOR DEFENDANTS-APPELLEES-CROSS-APPELLANTS

―――――――――

Joseph N. Akrotirianakis          Ashley C. Parrish
Aaron Craig                       Edmund Power
Matthew H. Dawson                 Zoe Beiner
Matthew V.H. Noller               KING & SPALDING LLP
KING & SPALDING LLP               1700 Pennsylvania Avenue NW
633 West Fifth Street             Washington, DC 20006
Suite 1600                        (202) 737-0500
Los Angeles, CA 90071             aparrish@kslaw.com
(213) 443-4355

*Counsel for Defendants-Appellees-Cross-Appellants*

July 19, 2024

# TABLE OF CONTENTS

Introduction ...................................................................................... 1

Argument .......................................................................................... 2

I.    The Court has jurisdiction over this cross-appeal. .......................... 2

II.   NSO is immune from suit as an agent of foreign governments. ...... 7

     A.    *Butters* entitles NSO to common-law immunity..................... 7

     B.    The FSIA does not exclude entities from common-law
         immunity. ............................................................................ 15

Conclusion...................................................................................... 19

# TABLE OF AUTHORITIES

## Cases

*Alicog v. Kingdom of Saudi Arabia,*
  860 F. Supp. 379 (S.D. Tex. 1994) .......................................................... 8

*Am. Roll-On Roll-Off Carrier, LLC*
  *v. P & O Ports Baltimore, Inc.,*
  479 F.3d 288 (4th Cir. 2007) .......................................................... 2, 3, 4

*Arbaugh v. Y&H Corp.,*
  546 U.S. 500 (2006) ..................................................................... 6

*B.P.J. ex rel. Jackson v. W.V. State Bd. of Educ.,*
  98 F.4th 542 (4th Cir. 2024) .......................................................... 5

*Broidy Cap. Mgmt. LLC v. Muzin,*
  12 F.4th 789 (D.C. Cir. 2021) ........................................................ 16

*Broidy Cap. Mgmt., LLC v. Qatar,*
  982 F.3d 582 (9th Cir. 2020) ..................................................... 11, 12

*Butters v. Vance,*
  225 F.3d 462 (4th Cir. 2000) ................................................... *passim*

*Doğan v. Barak,*
  932 F.3d 888 (9th Cir. 2019) ........................................................ 3

*El Paso Nat. Gas Co. v. Neztsosie,*
  526 U.S. 473 (1999) ..................................................................... 4

*Elec. Fittings Corp. v. Thomas & Betts Co.,*
  307 U.S. 241 (1939) ..................................................................... 5

*Fed. Rep. of Germany v. Philipp,*
  592 U.S. 169 (2021) ................................................................... 13

*Filarsky v. Delia,*
  566 U.S. 377 (2012) ................................................................... 16

*Harriman v. Associated Indus. Ins. Co.*,
   91 F.4th 724 (4th Cir. 2024) ................................................... 5

*HCA Health Servs. v. Metro. Life Ins. Co.*,
   957 F.2d 120 (4th Cir. 1992) ........................................... 4, 5

*Herbage v. Meese*,
   747 F. Supp. 60 (D.D.C. 1990) ............................................ 18

*Int'l Bhd. of Elec. Workers v. ICC*,
   862 F.2d 330 (D.C. Cir. 1988) ............................................. 5

*Ivey ex rel. Carolina Golf Dev. Co. v. Lynch*,
   2018 WL 3764264 (M.D.N.C. Aug. 8, 2018) ......................... 9

*JH ex rel. JD v. Henrico Cnty. Sch. Bd.*,
   326 F.3d 560 (4th Cir. 2003) ................................................ 3

*Luis v. Zang*,
   833 F.3d 619 (6th Cir. 2016) ............................................... 11

*Mitchell v. Forsyth*,
   472 U.S. 511 (1985) ........................................................... 3

*Moriah v. Bank of China Ltd.*,
   107 F. Supp. 3d 272 (S.D.N.Y. 2015) .............................. 9, 10

*Reynolds v. Am. Nat'l Red Cross*,
   701 F.3d 143 (4th Cir. 2012) ............................................... 5

*Rishikof v. Mortada*,
   70 F. Supp. 3d 8 (D.D.C. 2014), ......................................... 18

*Ruhrgas AG v. Marathon Oil Co.*,
   526 U.S. 574 (1999) ....................................................... 4, 6

*Samantar v. Yousuf*,
   560 U.S. 305 (2010) ................................................ 15, 16, 17

*Saudi Arabia v. Nelson*,
   507 U.S. 349 (1993) .......................................................... 13

*Taylor v. Grubbs*,
  930 F.3d 611 (4th Cir. 2019) .................................................................7

*United States v. North Carolina*,
  180 F.3d 574 (4th Cir. 1999) ................................................................6

*Velasco v. Gov't of Indonesia*,
  370 F.3d 392 (4th Cir. 2004) ................................................................9

*Vogel v. Linde*,
  23 F.3d 78 (4th Cir. 1994) ....................................................................5

*WhatsApp Inc. v. NSO Group Technologies Ltd.*,
  17 F.4th 930 (9th Cir. 2021).......................................................1, 7, 16

*Yousuf v. Samantar*,
  699 F.3d 763 (4th Cir. 2012) ..........................................................9, 15

## Other Authorities

1 Bryan Neihart, Litigation of
  International Disputes in U.S. Courts § 3:59 .......................................9

Br. for the United States as *Amicus Curiae*,
  *Mutond v. Lewis*, No. 19-185 (U.S. May 26, 2020),
  2020 WL 2866592 ................................................................................14

Br. for the United States as *Amicus Curiae*,
  *NSO Grp. Techs. Ltd. v. WhatsApp Inc.*,
  No. 21-1338 (U.S. Nov. 21, 2022), 2022 WL 17155734.................17, 18

DOJ Letter (Exh. A),
  *Cengiz v. bin Salman*, No. 20-cv-3009
  (D.D.C. Nov. 17, 2022), ECF 53-1 .......................................................14

Hazel Fox & Philippa Webb,
  The Law of State Immunity (3d ed. 2013)............................................9

Statement of Interest,
  *Matar v. Dichter*,
  No. 1:05-cv-10270 (S.D.N.Y. Nov. 17, 2006), ECF 36 .........................14

Statement of Interest,
   *Rosenberg v. Lashkar-E-Taiba*,
   No. 1:10-cv-05381 (E.D.N.Y. Dec. 17, 2012), ECF 35 .......................... 14

## INTRODUCTION

The district court properly dismissed this litigation for lack of personal jurisdiction because Plaintiff's claims lack any meaningful connection to Virginia. NSO's cross-appeal addresses another defect in Plaintiffs' case—namely, that she is asking a federal court to exercise jurisdiction over NSO for conduct she alleges was conducted by and on behalf of foreign governments. Her brief on appeal confirms as much. Accordingly, under this Court's decision in *Butters v. Vance*, the district court lacked subject-matter jurisdiction because private entities are immune from suit for actions taken on behalf of foreign governments. 225 F.3d 462, 466 (4th Cir. 2000). *Butters* is binding here, and a straightforward application of its holding entitles NSO to immunity.

Seeking to evade *Butters,* Plaintiff urges this Court to defy its own precedent. She relies almost entirely on the Ninth Circuit's decision in *WhatsApp Inc. v. NSO Group Technologies Ltd.*, 17 F.4th 930 (9th Cir. 2021), which openly conflicts with *Butters* and is therefore not entitled to any weight. *WhatsApp* is poorly reasoned, at odds with the purposes of sovereign immunity, and inconsistent with Supreme Court precedent and the United States' own approach to immunity. So even if this Court

*could* follow *WhatsApp*, it shouldn't. Instead, it should adhere to *Butters*, which accurately reflects the common law of conduct-based sovereign immunity that has governed for more than 200 years.

## ARGUMENT

## I. The Court has jurisdiction over this cross-appeal.

Plaintiff argues the Court lacks jurisdiction over NSO's cross-appeal because NSO is "not aggrieved by the judgment in [its] favor." Pl. Resp. Br. 2-3. Plaintiff misunderstands the rules. A cross-appeal is appropriate where, as here, the cross-appealing party seeks to modify a judgment that while generally in its favor reduces the party's substantive rights. Moreover, and in any event, because this Court has an independent obligation to confirm subject-matter jurisdiction, Plaintiff's objection is meritless. Plaintiff cites no case that has ever dismissed on jurisdictional grounds a cross-appeal that raises a threshold question of subject-matter jurisdiction.

1.    This Court's cases are clear that a cross-appeal is appropriate (if not required)—even from a favorable judgment—when the prevailing party's argument would "lead to … modification of the judgment." *Am. Roll-On Roll-Off Carrier, LLC v. P & O Ports Baltimore, Inc.*, 479 F.3d 288, 295 (4th Cir. 2007) (quoting *JH ex rel. JD v. Henrico Cnty. Sch. Bd.*,

326 F.3d 560, 567 n.5 (4th Cir. 2003)). In *American Roll-On*, for instance, this Court held that a defendant was *required* to cross-appeal from a favorable judgment to raise "an issue not addressed by the district court" because the Court, after rejecting the district court's reasoning, could not endorse the defendant's alternative rationale without "modify[ing] the district court's judgment." *Id.*

That principle justifies NSO's cross-appeal. By asserting its right to sovereign immunity, NSO presents a broader and more fundamental challenge to the district court's authority—one that goes beyond the district court's personal-jurisdiction ruling. Because conduct-based immunity is "an immunity from *suit* rather than a mere defense to *liability*," *Doğan v. Barak*, 932 F.3d 888, 895 (9th Cir. 2019) (cleaned up), it represents a substantive "entitlement not to have to answer for [the defendant's] conduct in a civil damages action." *Mitchell v. Forsyth*, 472 U.S. 511, 525 (1985). So while the district court's personal-jurisdiction holding shields NSO from suit *in Virginia* on the jurisdictional facts alleged, a ruling in NSO's favor on foreign sovereign immunity grounds would *completely immunize* NSO from claims like Plaintiff's, regardless of whether the plaintiff could allege a sufficient connection to the forum

3

state to support personal jurisdiction. That result would "'enlarg[e]'" NSO's rights relative to a personal-jurisdiction dismissal and thus "modify the district court's judgment." *Am. Roll-On*, 479 F.3d at 295 (quoting *El Paso Nat. Gas Co. v. Neztsosie*, 526 U.S. 473, 479 (1999)).

2.     For similar reasons, the district court's denial of sovereign immunity aggrieves NSO. The district court was not required to address NSO's sovereign immunity defense before dismissing for lack of personal jurisdiction. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584-85 (1999). By nonetheless holding that NSO lacks immunity from suit, the district court reduced NSO's substantive rights and exposed it to potential future suits in a way that would not be true if the court had dismissed on immunity grounds (or had it chosen not to address the issue). That is the sort of "injury to [NSO's] future legal rights" that even Plaintiff's authority acknowledges supports a prevailing party's cross-appeal. *HCA Health Servs. v. Metro. Life Ins. Co.*, 957 F.2d 120, 124 (4th Cir. 1992). Indeed, *HCA* cited with approval a D.C. Circuit decision that allowed a union to appeal a favorable agency decision because the "agency's holding that it had jurisdiction to consider [the] case adversely

4

affected [the] union's rights." *Id.* (citing *Int'l Bhd. of Elec. Workers v. ICC*, 862 F.2d 330, 334 (D.C. Cir. 1988)).

The same is true here. As in that D.C. Circuit decision, NSO "is not merely quibbling over the [court's] rationale in a case in which it has prevailed." *Int'l Bhd. of Elec. Workers*, 862 F.3d at 334. Similarly, unlike in the cases Plaintiff cites, NSO does not raise a sub-issue that the district court "wrongly failed to address," *HCA*, 957 F.2d at 124-25; challenge unfavorable "statements in" the court's "opinion[]," *B.P.J. ex rel. Jackson v. W.V. State Bd. of Educ.*, 98 F.4th 542, 553 (4th Cir. 2024) (quoting *Harriman v. Associated Indus. Ins. Co.*, 91 F.4th 724, 728 (4th Cir. 2024)); or "seek nothing more than to preserve a judgment in its favor," *Reynolds v. Am. Nat'l Red Cross*, 701 F.3d 143, 155 (4th Cir. 2012) (cleaned up) (quoting *Vogel v. Linde*, 23 F.3d 78, 79 n.3 (4th Cir. 1994)). Instead, NSO seeks review of an adverse jurisdictional ruling that could erroneously "subject" the company to the burdens of litigating "future cases" in which it is properly immune. *Int'l Bhd. of Elec. Workers*, 862 F.2d at 334. Plaintiff cites no case rejecting a cross-appeal in similar circumstances. *See also Elec. Fittings Corp. v. Thomas & Betts Co.*, 307 U.S. 241, 242 (1939) (cited with approval in *HCA*, 957 F.2d at 124, and

permitting cross-appeal by prevailing party in patent-litigation suit because the district court, despite finding no infringement, erroneously ruled on patent validity).

3.     Nor does Plaintiff cite any case dismissing a cross-appeal raising issues of subject-matter jurisdiction, which this Court "ha[s] an independent obligation to determine … even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). Although this Court may affirm the district court's personal-jurisdiction dismissal without addressing subject-matter jurisdiction, *Ruhrgas*, 526 U.S. at 584-85, the jurisdictional nature of sovereign immunity means that this Court may not *reverse* without first deciding whether NSO is immune from suit. It was therefore prudent and appropriate for NSO to file a cross-appeal, bringing this important issue to the Court's attention. The cross-appeal properly ensures that NSO will not be subject to an order from this Court remanding a case that the district court has no power to entertain. *See United States v. North Carolina*, 180 F.3d 574, 580 (4th Cir. 1999) (addressing prevailing party's cross-appeal on subject-matter jurisdiction).

This Court's independent obligation to consider subject-matter jurisdiction also leaves it unclear what Plaintiff hopes to accomplish by challenging NSO's cross-appeal. There is no dispute that NSO may challenge the district court's immunity ruling. Whether it does so through a cross-appeal or in response to Plaintiff's direct appeal makes no difference to the issues before the Court.

## II.    NSO is immune from suit as an agent of foreign governments.

This Court's binding decision in *Butters* establishes that NSO is immune from suit based on its undisputed status as an alleged agent of foreign governments. NSO Br. 51-57. Plaintiff asks this Court to disregard *Butters* and instead adopt the Ninth Circuit's decision in *WhatsApp Inc. v. NSO Group Technologies Ltd.*, 17 F.4th 930 (9th Cir. 2021). But this Court cannot refuse to follow *Butters*, and Plaintiff offers no good reason for it to do so. *See Taylor v. Grubbs*, 930 F.3d 611, 619 (4th Cir. 2019) (explaining that a panel is bound by prior circuit precedent). This Court should adhere to *Butters,* reverse the district court on this issue, and hold that NSO is immune from suit.

### A.    *Butters* entitles NSO to common-law immunity.

This Court held in *Butters* that the "private agents of foreign governments" are entitled to "sovereign immunity." 225 F.3d at 466.

7

Plaintiff does not dispute that, under her allegations, NSO acted solely as an agent of foreign governments. That should be the end of the matter—just as in *Butters*, NSO is immune because Plaintiff alleges it was "following the commands of a foreign sovereign employer." *Id.*

1.    Plaintiff cannot distinguish *Butters*. She first contends that *Butters* relied on "*domestic* immunity law" to award "derivative immunity under the FSIA." Pl. Resp. Br. 10-11 (cleaned up). But *Butters* could hardly have been clearer that it was awarding foreign "sovereign immunity," not domestic contractor immunity. 225 F.3d at 466. This Court relied on *Alicog v. Kingdom of Saudi Arabia*, 860 F. Supp. 379, 382-85 (S.D. Tex. 1994), *aff'd*, 798 F.3d 1145 (5th Cir. 1996) (Table), which unambiguously involved foreign sovereign immunity. The Court also applied the test for common-law conduct-based immunity, holding that private agents are immune "when following the commands of a foreign sovereign employer." *Butters*, 225 F.3d at 466. And it did so based on conduct-based immunity's rationale, observing that "courts define the scope of sovereign immunity by the nature of the function being performed—not by the office or the position of the particular employee involved." *Id.* Accordingly, as this Court later recognized, *Butters*

addressed the "expansion of *foreign sovereign immunity*" to foreign agents, while using "derivative U.S. sovereign immunity" only as an "analogy." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 399 (4th Cir. 2004) (emphasis added).

*Butters*'s reference to the FSIA reflects nothing more than the reality that, before the Supreme Court's decision in *Samantar*, courts routinely found that the FSIA incorporated the common-law doctrine of conduct-based immunity. *Yousuf v. Samantar*, 699 F.3d 763, 774-75 (4th Cir. 2012); *Velasco*, 370 F.3d at 398-99. After *Samantar*, the source of that immunity must be the common law, not the FSIA. *Yousuf*, 699 F.3d at 774-75. But "pre-*Samantar*" decisions like *Butters* still "are instructive for post-*Samantar* questions of common law immunity." *Id.* That is why courts and commentators alike have understood *Butters* as endorsing *common-law* conduct-based immunity. *Ivey ex rel. Carolina Golf Dev. Co. v. Lynch*, 2018 WL 3764264, at *2, *6-7 (M.D.N.C. Aug. 8, 2018); *Moriah v. Bank of China Ltd.*, 107 F. Supp. 3d 272, 277 & n.34 (S.D.N.Y. 2015); 1 Bryan Neihart, Litigation of International Disputes in U.S. Courts § 3:59 & n.132; Hazel Fox & Philippa Webb, The Law of State Immunity 444, 453 (3d ed. 2013).

9

2. Plaintiff next argues that *Butters* applies only to "United States compan[ies]," Pl. Resp. Br. 11, but she does not even try to engage with NSO's explanation of why that is incorrect, NSO Br. 61-63. The purpose of conduct-based immunity is not, as Plaintiff suggests, to help U.S. businesses by increasing the number of contracts they receive from foreign governments. It is "to protect the exercise of certain governmental functions," even "when the government delegates that function." *Butters*, 225 F.3d at 466. As *Butters* put it, "[a]ll sovereigns need flexibility to hire private agents to aid them in conducting their governmental functions," *id.*, and the choice of which private agent to use is *itself* a sovereign decision entitled to respect. That "flexibility" would be "significantly impede[d]" if immunity required a foreign government to delegate its sovereign activities to U.S. rather than foreign contractors. *Id.; see also Moriah*, 107 F. Supp. 3d at 277 & n.34 (applying common-law immunity under *Butters* to Israeli agent of Israel).

Nor can Plaintiff credibly deny that she alleges "sovereign activity." Pl. Resp. Br. 12. She contends that the UAE and Saudi Arabia used NSO's technology to monitor her to gather intelligence on Jamal Khashoggi, a prominent "activist" who "call[ed] for governmental reform

in Saudi Arabia." JA9 ¶ 8. The core of her claims is that Saudi Arabia allegedly "leveraged its relationship with a key ally, the United Arab Emirates, to install Pegasus on her phones, which would then allow [Saudi Crown Prince Mohammed bin Salman] to monitor and track Jamal." JA31 ¶ 108.

That is purely sovereign, governmental conduct—it is nothing remotely like a "jealous husband's hiring of [a] spyware company to surveil [his] wife's electronic communications." Pl. Resp. Br. 12 (citing *Luis v. Zang*, 833 F.3d 619, 622 (6th Cir. 2016), a case that has nothing to do with sovereign immunity). Plaintiff alleges that *foreign governments*, not a private citizen, hired NSO and used its software. Indeed, Plaintiff alleges that *only* the UAE government was involved in installing Pegasus on her phones, and she consistently ties the alleged monitoring of her devices to Saudi Arabia and the UAE. *See* JA30-31; JA33 ¶ 113; JA37 ¶ 129. Such "deployment of clandestine agents to collect foreign intelligence" is "peculiarly sovereign conduct," *Broidy Cap. Mgmt., LLC v. Qatar*, 982 F.3d 582, 595 (9th Cir. 2020), even when it does not involve "gather[ing] intelligence *on foreign states*," Pl. Resp. Br. 12-13 n.2 (emphasis added).

11

Contrary to Plaintiff's insinuation, *Broidy* did not involve a government gathering intelligence on other governments. The plaintiff in *Broidy* was a private U.S. citizen and critic of the Qatari government who alleged that hackers hired by Qatar "hacked into [his] computer servers, stole [his] confidential information, and leaked it to the media in a retaliatory effort to embarrass [him]." 982 F.3d at 586. The Ninth Circuit held that those alleged "covert cyberespionage and public relations activities," *id.* at 592, were "peculiarly sovereign conduct" notwithstanding the fact that "there are bad actors in the commercial sphere who employ similar tactics," *id.* at 594-95.

The same is true here. Plaintiff alleges that the UAE and Saudi Arabia monitored her communications for purely governmental reasons, namely that Mr. Khashoggi's "writings and critiques of the Saudi regime" angered the Saudi government and threatened its "tight[] control[]" over "[p]ublic discourse." JA10 ¶ 16, JA27 ¶ 88; *see also* JA26-33. She alleges, accordingly, that the UAE's monitoring of her devices occurred as part of a broader series of governmental actions against her and Mr. Khashoggi—including periods of government detention, house arrest, and restrictions on travel, JA28-31—that culminated, according to Plaintiff's allegations,

in Mr. Khashoggi being killed by Saudi agents controlled by Saudi Crown Prince Mohammed bin Salman.[1] *See* JA10 ¶ 16; JA35 ¶¶ 120-21.

3.     Such alleged governmental actions to "suppress[] dissent and intimidat[e] the public," JA20 ¶ 57, while noxious to U.S. ideals, are nonetheless distinctly *sovereign* activities. Foreign sovereign immunity applies even when a defendant is sued for violating federal or international law, "however monstrous such abuse undoubtedly may be." *Saudi Arabia v. Nelson*, 507 U.S. 349, 361-62 (1993); *see also Fed. Rep. of Germany v. Philipp*, 592 U.S. 169, 182 (2021) (recognizing "international law's preservation of sovereign immunity for violations of human rights law"). The United States has recommended common-law immunity for defendants accused of extrajudicial killings, terrorism, war crimes, torture, and the like—conduct of an entirely different order than

---

[1] Plaintiff's argument that *Butters* applies only to foreign governments' conduct "in the United States," Pl. Resp. Br. 11, is wrong for the same reasons. It is also self-defeating, since she asserts that the UAE and Saudi Arabia *did* use NSO's software to take actions in the United States. That is incorrect for all the reasons the district court gave in dismissing for lack of personal jurisdiction. NSO Br. 24-32. But if this Court were to find that Plaintiff adequately alleged conduct directed at Virginia, that would establish the very U.S. conduct she contends *Butters* requires.

anything Plaintiff alleges NSO did.[2] In fact, the United States recommended common-law immunity *in favor of Saudi Crown Prince Mohammed bin Salman* in a lawsuit challenging his alleged role in the "murder of Jamal Khashoggi," despite the government's "unequivocal condemnation" of Mr. Khashoggi's death. DOJ Letter at 1 (Exh. A), *Cengiz v. bin Salman*, No. 20-cv-3009 (D.D.C. Nov. 17, 2022), ECF 53-1. In light of this established government practice of recommending common-law immunity for international crimes "contrary to U.S. national security or foreign policy interests," Plaintiff cannot credibly suggest that NSO's mere presence on the Commerce Department's "Entity List" undermines immunity. Pl. Resp. Br. 13 n.3.

Nor does it matter that the State Department has not issued a "suggestion of immunity" for NSO in this case. Pl. Resp. Br. 13 (quotation marks omitted). While this Court will consider a suggestion of immunity

---

[2] *E.g.,* Statement of Interest at 1*, Rosenberg v. Lashkar-E-Taiba*, No. 1:10-cv-05381 (E.D.N.Y. Dec. 17, 2012), ECF 35 (recommending immunity for defendants allegedly involved in "terrorist attacks"); Statement of Interest at 1-2, *Matar v. Dichter*, No. 1:05-cv-10270 (S.D.N.Y. Nov. 17, 2006), ECF 36 (suggesting immunity for official accused of "war crimes," "crimes against humanity," and "extrajudicial killing" (cleaned up)); Br. for the United States as *Amicus Curiae* at 19, *Mutond v. Lewis*, No. 19-185 (U.S. May 26, 2020), 2020 WL 2866592 (arguing conduct-based immunity protects "heinous acts" of torture).

when one exists, it does not follow that a defendant cannot receive common-law immunity *without* a suggestion of immunity. *Yousuf*, 699 F.3d at 773. To the contrary, when the State Department has not issued a suggestion for *or* against immunity, *courts* have the "authority to decide for [themselves] whether all the requisites for such immunity exist[]." *Samantar v. Yousuf*, 560 U.S. 305, 311 (2010) (cleaned up). Even when the State Department has *rejected* immunity—which it has not done for NSO in this case—its "determination regarding conduct-based immunity … is not controlling." *Yousuf*, 699 F.3d at 773.

*Butters*, by contrast, *is* controlling. And *Butters* conclusively establishes that "all the requisites for [conduct-based] immunity exist[]," *Samantar*, 560 U.S. at 311 (cleaned up), when a plaintiff challenges actions that a private entity allegedly took on behalf of a foreign government. Because that is precisely what Plaintiff alleges here, NSO is immune.

## B.   The FSIA does not exclude entities from common-law immunity.

Unable to avoid *Butters*, Plaintiff focuses on the Ninth Circuit's decision in *WhatsApp*. Pl. Resp. Br. 8-10. But she makes no attempt to explain how *WhatsApp* can be reconciled with *Butters*. *See* NSO Br. 58-

15

59 (explaining why it can't be). Even under Plaintiff's unduly narrow reading of *Butters*, she concedes it granted immunity to a private entity—something *WhatsApp* categorically forbids. 17 F.4th at 937. That is why *WhatsApp* expressly rejected *Butters*, a point Plaintiff ignores. *Id.* at 939 n.6. This Court, by contrast, remains bound by *Butters*, which precludes it from adopting the Ninth Circuit's contrary holding.[3]

In any event, Plaintiff's cursory defense of the Ninth Circuit's decision flouts the fundamental "assumption that common-law principles of immunity were incorporated into our judicial system and that they should not be abrogated absent clear legislative intent to do so." *Filarsky v. Delia*, 566 U.S. 377, 389 (2012) (cleaned up). As *Samantar* recognized, nothing in the FSIA "indicate[s]" that Congress intended to "supersede" the common "law of foreign official immunity." 560 U.S. at 325. To argue otherwise, Plaintiff relies on "Congress's choice to include corporate entities with sufficiently close relationships to governments within the FSIA's coverage." Pl. Resp. Br. 8. But that is entirely consistent with

---

[3] Plaintiff does not address the D.C. Circuit's decision in *Broidy Cap. Mgmt. LLC v. Muzin*, 12 F.4th 789, 802 (D.C. Cir. 2021), which likewise conflicts with *WhatsApp* by holding that claims of immunity by "private entities" must "rise or fall not under the FSIA, but the residual law and practice that the FSIA did not displace."

Congress's intent to "supersede the common-law regime" only "for claims against *foreign states*." *Samantar*, 560 U.S. at 325 (emphasis added). Some entities are, by statutory definition, "foreign states." *Id.* at 325. Some are not. And when they are not, the FSIA has nothing to say about the availability of immunity. *Id.*

That follows from the distinct purposes of *foreign state* immunity (governed by the FSIA) and *conduct-based* immunity (governed by the common law). NSO Br. 59-60. As the United States put it when explaining to the Supreme Court why *WhatsApp* was wrongly decided, immunity under the FSIA is "*status-based*" and thus "address[es] only entities that Congress determined should be covered by a foreign state's *sovereign* immunity because they are so closely connected with the foreign state that they are deemed to be part of the state itself." Br. for the United States as *Amicus Curiae* at 9, *NSO Grp. Techs. Ltd. v. WhatsApp Inc.,* No. 21-1338 (U.S. Nov. 21, 2022), 2022 WL 17155734. That is "distinct from the question whether a more limited form of *conduct-based* immunity could be recognized for specific acts undertaken on behalf of a foreign state by an entity." *Id.* Contrary to the Ninth

17

Circuit's decision, the FSIA "does not necessarily resolve" that question. *Id.* at 10.

Butters does resolve that question, and it does so correctly. There is no coherent reason to exclude private entities alone from the scope of conduct-based immunity, which "does not depend on the *identity* of the person or entity [seeking immunity] so much as the *nature of the act* for which the person or entity is claiming immunity." *Herbage v. Meese*, 747 F. Supp. 60, 66 (D.D.C. 1990); *accord Butters*, 225 F.3d at 466. As long as "the act was performed on behalf of the foreign state," *Rishikof v. Mortada*, 70 F. Supp. 3d 8, 13 (D.D.C. 2014), conduct-based immunity does not categorically exclude any "person *or entity*" from its reach, *Herbage*, 747 F. Supp. at 66 (emphasis added).

NSO is both eligible for and entitled to conduct-based immunity. The district court erred in holding otherwise.

## CONCLUSION

If this Court reaches the issue, it should hold that the district court

lacked subject-matter jurisdiction over this lawsuit.

Respectfully submitted,

*s/Ashley C. Parrish*

| | |
|---|---|
| Joseph N. Akrotirianakis | Ashley C. Parrish |
| Aaron Craig | Edmund Power |
| Matthew H. Dawson | Zoe Beiner |
| Matthew V.H. Noller | KING & SPALDING LLP |
| KING & SPALDING LLP | 1700 Pennsylvania Avenue NW |
| 633 West Fifth Street | Washington, DC 20006 |
| Suite 1600 | (202) 737-0500 |
| Los Angeles, CA 90071 | aparrish@kslaw.com |
| (213) 443-4355 | |

*Counsel for Defendants-Appellees-Cross-Appellants*

July 19, 2024

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fourth Circuit Rule 28.1(e)(2)(C), because it contains 3,655 words, excluding the parts of the brief exempt by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6), because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word 365 ProPlus.

Date: July 19, 2024

*s/Ashley C. Parrish*
Ashley C. Parrish

*Counsel for Defendants-
Appellees-Cross-Appellants*
